WILLIAM SCHOLLHORN CO. v. BRIDGEPORT MFG. CO. et al.

(Circuit Court, D. Connecticut. January 12, 1898.)

1. PATENTS—NOVELTY AND INVENTION—PLIERS.

The Bernard patent, No. 427,220, for pliers having parallel jaws, to which sheet-metal handles may be attached, so as to apply the power equally at both sides of the jaws, and having an unobstructed opening between the jaws for the passage of a rod, wire, or tool, *held* valid as to claim 1; and *held*, that this claim was infringed by pliers of similar make, excepting that the passage between the jaws was in part blocked up.

2. SAME.

 The Bernard patent, No. 427,497, for a punch, which is added **to the** pliers of his patent No. 427,220, *held* void for want of invention, in view of the prior state of the art.

This was a suit in equity by the William Schollhorn Company against the Bridgeport Manufacturing Company, Willis F. Hobbs, Ellie N. Sperry, and Adolf Schatz, for alleged infringement of certain patents for inventions.

Robinson & Fisher and John K. Beach, for complainant.
Schreiter, Van Iderstine & Matthews, for defendants.

TOWNSEND, District Judge. This is a bill in equity charging infringement of the first claim of patent No. 427,220, for pliers, and the second claim of patent No. 427,497, for punches, both dated May 6, 1890, and granted to William A. Bernard, and assigned to complainant. The defendants contend that the patents are void for want of patentable novelty, and deny infringement.

Four facts are uncontroverted or clearly proved. The principal patent, No. 427,220, was refused by the primary examiner, and allowed by the board of examiners in chief, on appeal. The pliers manufactured under these patents have been very successful in the market, and are having a large sale, having superseded all former parallel pliers, and created a demand for such articles where parallel pliers were not before used. The defendant Schatz, who manufactures the alleged infringing articles (the other defendants being his jobbers), was in the employ of the complainant for a long time, having had charge of the manufacture of its punches, and while so in its employ applied for the patent under which he claims that his pliers and punches are made. He was notified that the manufacture of pliers under that patent would be an infringement upon the patents in suit, and, after leaving the employ of the complainant, he commenced manufacturing his pliers and punches in competition with those of complainant. Public acquiescence has continued for about six years.

The claims alleged to be infringed are as follows:

Patent No. 427,220: "(1) The combination, with the solid jaws, f and f, of the lever handles, a, a, b, b, of sheet metal, bent up to form hollow hand portions, the parts, a', b', being flat, or nearly so, and crossing each other at opposite sides of the jaws, and connected by the pivot, d, substantially **as set** forth."

Patent No. 427,497: "(2) The combination, with the lever handles having crosspieces riveted together, of the jaws, A, B, and the rivets or screws connecting the same to the lever handles; the jaw, B, having an arm, F, formed with or connected to it, and extending along the back of the jaw, and a punch, G, passing transversely through the parallel moving jaws, and a counter die in the end of the arm, against which the punch acts, substantially as set forth."

The prior patent, No. 427,220, for pliers, will be considered first. The principal patents cited as proofs of anticipation were considered at the patent office before granting the patent. The board of examiners in chief, in allowing the patent, give the following reasons:

"The patent to Russell (Ex. 19) shows the parallel motion in a pair of pliers with solid forged handles. Broadbrook's (Ex. No. 33) shows the central passage for wire in a wire-cutting nippers. Ellis' (Ex. 26) shows spring tweezers formed of sheet metal. The British patent, No. 14,065, 1886 (Ex. No. 39), shows a method of making pliers, pincers, and like nipping tools out of sheet metal; also German patent, No. 35,406 (Ex. 42). Appellant does not claim broadly the parallel motion nippers, nor the making of pliers out of

sheet metal, nor the wire passage, but a specific construction of pliers, having the parallel motion construction and the wire passage, when constructed, as described, out of blanks of sheet metal, the use of the latter serving the purposes of two former constructions by a combination involving some ingenuity to work out."

The defendant Schatz, in making his pliers, has imitated complainant's pliers, except that he has substituted for the slots and pins which control the motion of the rear ends of the jaws, a kind of cam movement, which is a mechanical equivalent, but which partly blocks up the wire passage referred to in the reasons of the examiners in chief.

The object of the invention, as stated in the specification, "is to provide an unobstructed opening through between the parallel jaws for the passage of a rod, wire, or tool, and to attach sheet-metal handles to the jaws in such manner that the power will be applied equally at both sides of the jaws, to insure a proper strength and uniformity of motion."

Defendants insist that the essential purpose of the invention was an unobstructed wire passage, and that, as Schatz has blocked this up, his pliers do not infringe. The merits of Bernard's invention, however, as shown by actual experience, do not consist wholly, or necessarily, in providing the wire passage. The jaws are solid or block-shaped. The whole width of the jaws is between the side portions or cross levers of the handles. The gripping surfaces of the jaws extend back to the fulcrum or pivot. The rear ends of the jaws extend into hollow portions of the handles. As a whole, a much stronger and more effective instrument is produced, with a firmer and more even grip. This element of grip, also, the defendants have appropriated, as appears from their catalogue, in which, referring to the infringing pliers, they say: "The gripping strength is greater, and the twisting strength double, that of any other tool made." Even if it were true that, by having dispensed with one of the features of complainant's patent, defendants had produced a plier which was therefore inferior, this would be no defense. But defendants have not so blocked the passage as to dispense with said feature, but have appropriated it by retaining the unobstructed passage back as far as the fulcrum.

The prior art cited is old, and between the dates of the patents cited and the complainant's invention no pliers of equal merit were produced. While defendants show that many, if not all, of the different elements of complainant's pliers may be found in the prior art, some in one device and some in another, no former instrument of the kind contains them all. The construction covered by the claim in suit does not widely depart from the prior art, and yet I am satisfied that it shows patentable novelty. Sheet-metal handles and pivotal jaws having a parallel motion are old. But when Bernard so devised his plier that "the power will be applied equally at both sides of the jaw, to insure the proper strength and uniformity of movement" and thereby uniformity of pressure, which it was the object of his invention to provide, he invented a new tool, with a greater possibility of application of power and adaptation to more extended uses. Compare

this plier with the Russell plier, patented in 1877, which is evidently the strongest reliance of defendants. Its grip is limited, and its strength diminished by the skeleton jaws slotted in two directions, and the object to be gripped is not only outside the center of strain, but substantially outside of the forward ends of the levers. For this reason, and because of said slotted skeleton jaws, said plier is much more liable to break than in complainant's construction, with outside cross levers where the gripping surfaces extend back to the fulcrum.

Defendants are in no position to question the utility of the Bernard device. It is new. The board of examiners have found that it showed invention. The public for six years have acquiesced. Defendants' pliers and punch come within the terms of the claim. I conclude that claim 1 of patent No. 427,220 is valid.

Patent No. 427,497 adds to the pliers of No. 427,220 a punch having its head fixed in one of the parallel jaws, with a screw and thread connection, which punch extends through and is guided by the companion jaw, so that, when the jaws are closed, the end of the punch enters a die or hole in the end of a bracket arm, which is fastened upon the outside of this latter jaw, and so as to be parallel to it. Although both patents were issued on the same day, the application for the punch patent was filed several months after that for the pliers. In view of the many instances of a similar punch added to pliers in the prior art, it is difficult to see any invention in this second patent, distinct from that contained in the first.

Let a decree be entered for an injunction and an accounting as to the first claim of patent No. 427,220.